**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **LEMKO CORPORATION, an Illinois Corporation,** | |
| **Plaintiff.** | |
| **v.** | **Case No. Civ. No. 3:22-CV-363-L** |
| **MICROSOFT CORPORATION, a Washington Corporation, and AFFIRMED NETWORKS, INC., a Delaware Corporation,** | |
| **Defendants.** | |

**DEFENDANTS MICROSOFT AND AFFIRMED NETWORKS'S
MOTION TO DISMISS PLAINTIFF LEMKO'S COMPLAINT
<u>PURSUANT TO RULE 12(b)(6)</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    FACTUAL BACKGROUND ...................................................................... 2

III.   LEGAL STANDARDS ............................................................................... 4

IV.    ARGUMENT ............................................................................................... 5

    A.     Lemko's Complaint Should be Dismissed in its Entirety
    Because it Fails to State any Claim for Direct or Indirect
    Infringement ..................................................................................... 5

        1.     The Court should dismiss Lemko's infringement claims
        because Lemko fails to plausibly allege that the accused
        products are used in conjunction ............................................ 5

        2.     Lemko compounds the implausibility of its direct
        infringement allegations by relying on additional
        unrelated products. ................................................................. 8

            a)     Lemko's direct infringement allegations depend
            on incorporating products owned by third parties
            unrelated to Defendants or their products. ...................... 9

            b)     Lemko's allegations concerning the operability
            of additional products are inconsistent with the
            exhibits on which Lemko relies. .................................... 13

        3.     Absent an underlying direct infringement, Lemko's
        indirect infringement claims are also subject to
        dismissal. ............................................................................... 14

    B.     Independently, Lemko's Claims of Indirect Infringement and
    Willfulness Should Be Dismissed Because the Complaint Fails
    to Allege Additional Elements Required for Those Claims ............... 15

        1.     Lemko fails to plead actual knowledge of the patents-in-
        suit required for claims of willfulness or indirect
        infringement. ......................................................................... 15

            a)     Lemko's patent marking allegations are legally
            insufficient to allege Defendants' actual
            knowledge of the patents-in-suit for purposes of
            willfulness or indirect infringement. ............................. 15

            b)     Lemko's allegations that over a decade ago an
            employee of a different company was informed

i

Lemko had patents and that company was later acquired by Microsoft is too attenuated to allege Defendants' actual knowledge of the patents-in-suit. .............................................................................. 17

c)      Filing of this Complaint is legally insufficient to state a claim for pre-suit or post-suit willfulness or indirect infringement. .............................................. 19

2.      Lemko fails to state a claim for indirect infringement because it fails to allege other required elements of contributory infringement or active inducement...................................... 20

a)      Lemko fails to plead plausible facts that Defendants knew the accused products were contributing to infringement of the patents in suit. ...................................................................................... 21

b)      Lemko fails to plead plausible facts of specific intent by Defendants to sustain an induced infringement claim. ...................................................... 22

V.      CONCLUSION............................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
  2014 WL 2892285 (W.D. Tex. May 12, 2014) ...................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................4

*Avocent Huntsville, LLC v. ZPE Sys., Inc.*,
  No. 3:17-cv-04319-WHO, 2018 WL 1411100 (N.D. Cal. Mar. 21, 2018) ............18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................4, 17

*In re Bill of Lading*,
  681 F.3d 1323 (Fed. Cir. 2012)......................................................................14, 21

*BMC Res., Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2007)...........................................................................5

*Bot M8 LLC v. Sony Corp. Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) .............................................................................5

*Chapterhouse, LLC v. Shopify, Inc.*,
  No. 2:18-cv-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)...............11

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015)......................................................................................15

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ..........22, 23

*Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*,
  Case No. 20-CV-06469-EMC, 2-3, 5-6 (N.D. Cal. May 5, 2022)..........................18

*F2VS Techs., LLC v. Aruba Networks, Inc.*,
  No. 17-0754-RGA, 2018 WL 1732152 (D. Del. Apr. 10, 2018)..............................8

*Finjan, Inc. v. Cisco Sys., Inc.*,
  No. 17-cv-72, 2017 WL 2462423 (N.D. Cal. June 7, 2017)..............................18, 19

*Gentilello v. Rege*,
  627 F.3d 540 (5th Cir. 2010) ........................................................................5, 7, 12

*Iron Oak Technologies, LLC v. Dell, Inc.*,
    2018 WL 1631396 (W.D. Tex. 2018) .......................................................................21

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*,
    No. 6:20-CV-00318-ADA, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021) .............................16

*Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*,
    No. 2:20-cv-008272021 ....................................................................................16, 17

*M & C Innovations, LLC v. Igloo Prod. Corp.*,
    No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) ........................................15

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
    No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018) ...............................15

*Omega Patents, LLC v. CalAmp Corp.*,
    920 F.3d 1337 (Fed. Cir. 2019) ......................................................................10, 19

*OpenTV, Inc. v. Apple, Inc.*,
    14–CV–01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ......................................18

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*,
    No. 6:11-cv-229, 2012 WL 9864381 (E.D. Tex. July 27, 2012) ...........................................11

*Proxyconn Inc. v. Microsoft Corp.*,
    2012 WL 1835680 (C.D. Cal. May 16, 2012) ......................................................................20

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
    No. 4:19-cv-876-SDJ, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) ...........................1, 8, 14

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
    slip op., No. 2:21-cv-9011-RGK (C.D. Cal. Jan. 18, 2022) ....................................................20

*Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*,
    No. 6:20-CV-19-4952, 2019 WL 8161141 (C.D. Cal. Aug. 30, 2019) ...............................16

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
    215 F.3d 1246 (Fed. Cir. 2000) ................................................................................................5

*Secured Mail Sol. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) ..............................................................................................5, 7

*Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc.*,
    849 F. Supp. 2d 963 (S.D. Cal. 2012) .......................................................................................8

*Seven Networks, LLC v. Motorola Mobility LLC*,
    No. 3:21-CV-01036-N, 2022 WL 426589 (N.D. Tex. Feb. 10, 2022) ...............................19, 20

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
   No. 5:19-cv-243-H, 2020 WL 5500238 (N.D. Tex. Sept. 11, 2020).....................9, 11, 12, 13

*State Indus., Inc. v. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985)...........................................................................................15

*TeleSign Corp. v. Twilio, Inc.*,
   No. 16-2106, 2016 WL 4703873 (C.D. Cal. Aug. 3, 2016) ...............................................8, 14

*Van De Vliert v. Tam Int'l, Inc.*,
   No. 6:15-cv-135-JRG, 2015 WL 6745811 (E.D. Tex. 2015) ................................................10

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   528 F. Supp. 3d 247 (D. Del. 2021)........................................................................................19

**Statutes**

35 U.S.C. § 271(b) .......................................................................................................................3, 4

35 U.S.C. § 271(c) .......................................................................................................................3, 4

35 U.S.C. § 284............................................................................................................................3, 16

**Other Authorities**

Fed. R. Civ. P. 8 ..............................................................................................................................22

Fed. R. Civ. P. 8(a)(2)........................................................................................................................1

Fed. R. Civ. P. 12 ..............................................................................................................................3

Fed. R. Civ. P. 12(b)(6).................................................................................................................1, 13

## I.      INTRODUCTION

Plaintiff Lemko Corporation ("Lemko") alleges that Defendants Microsoft Corporation ("Microsoft") and Affirmed Networks ("Affirmed") directly, indirectly, and willfully infringe eight patents: U.S. Patent Nos. 7,548,763 ("the '763 patent"), 7,563,414 ("the '414 patent"), 7,855,988 ("the '988 patent"), 8,107,409 ("the '409 patent"), 8,688,111 ("the '111 patent"), 9,191,980 ("the '980 patent"), 9,332,478 ("the '478  patent"), and 9,755,931 ("the '931 patent") (collectively, "the patents-in-suit").   Defendants move to dismiss each of these claims under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), as Lemko fails to plead any facts that plausibly support these allegations.

Under the veil of providing detailed factual allegations supporting its infringement claims, Lemko "pleads [itself] out of court by alleging facts that establish defendants' entitlement to prevail." *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-cv-876-SDJ, 2020 WL 6781566, at *3 (E.D. Tex. Nov. 17, 2020) (granting motion to dismiss direct and indirect infringement claims) (citation and quotation omitted).   Lemko's infringement allegations span over 300 paragraphs, include citations to 56 exhibits, and specifically name and identify multiple combinations of Microsoft and Affirmed products of infringement.   But in doing so, Lemko incoherently mixes and matches components from various Microsoft and Affirmed products, conflates product lines and functionalities, and even cites evidence of "infringement" from an unrelated, third party located in Taiwan. "[G]iven the irreconcilable internal inconsistencies on the face of its pleading," all of Lemko's claims for direct and indirect infringement "are implausible on their face and thus require dismissal." *Id.* at *4-5.

Separately, Lemko's claims of indirect and willful infringement independently fail to state a claim because Lemko does not plead facts that Defendants had actual notice of the patents-in-suit before suit was filed, a required element of both.   Lemko's claims of indirect infringement,

based alternatively on theories of active inducement or contributory infringement, are also missing additional required elements of each of those causes of action. Accordingly, Lemko's claims of indirect infringement and its prayer for a finding of willful infringement should also be dismissed.

Since Lemko fails to plausibly state a claim for any relief, Defendants respectfully request that this Court dismiss the complaint in its entirety with prejudice, as amendment would be futile.

## II.    FACTUAL BACKGROUND

Lemko alleges that the patents-in-suit "are rooted in computer technology" and "are directed to specific hardware architectures with different applications that improve the communications of and between mobile devices." Dkt. 1 ¶ 36. In particular, Lemko alleges the patents-in-suit solve "problems relating to different aspects of determining if a mobile device is registered with a specific [distributed mobile architecture] or is roaming and should be connected to a different home [distributed mobile architecture]," along with other "significant improvements over conventional networking technology." *Id.* ¶¶ 31-32.

Lemko does not accuse any single Microsoft or Affirmed product of infringement, and instead relies on combining various products to allege infringement. Specifically, all of Lemko's infringement claims are rooted in combining two distinct product groups—Microsoft's "Azure Stack Edge" products and Affirmed's "Virtual Evolved Pack Core" product.[1] Lemko alleges that Microsoft's Azure Stack Edge products "are servers and related services for managing devices from the cloud," and include two server types, the "Pro Series (Pro and Pro R)" and the "Mini Series." *Id.* ¶ 41. Lemko separately alleges that Affirmed's Virtual Evolved Packet Core product "is software for managing and controlling networks." *Id.* ¶ 42. All of Lemko's infringement

---

[1] Lemko's complaint refers to Azure Stack Edge as "ASE" and Virtual Evolved Packet Core as "vEPC," and collectively refers to these products as "Core MEC Products." *See* Dkt. 1 ¶¶ 40-42. For clarity, Defendants refer to the full names of these products throughout their motion.

allegations for the eight patents-in-suit are premised on Lemko's allegation that Microsoft's Azure Stack Edge servers are combined with Affirmed's Virtual Evolved Packet Core software, an amalgamation Lemko refers to "collectively" throughout the complaint as "Core MEC products." *Id.* ¶¶ 40, 58, 94, 129, 158, 190, 224, 254, 288.  There is just one problem.  Microsoft's Azure Stack Edge and Affirmed's Virtual Evolved Packet Core software are not used together, and Lemko's allegations are contradicted by the very exhibits that it cites.

Moreover, Lemko does not even allege that any of the mixed and matched products alone infringe any of the eight patents-in-suit.  Instead, Lemko's complaint relies on combining *additional* products with the Azure Stack Edge and Virtual Evolved Packet Core to try to state a claim.  *Id.* ¶¶ 44.  As shown in Attachment 1, Lemko further combines the hypothetical combination of "Core MEC Products" with one or more of Affirmed Cloud Edge, Affirmed Private Network Service, Affirmed Virtual Probe, Affirmed Network Slicing, and/or Affirmed Network Function Manager to allege that some combination of three to five products infringe the patents-in-suit.  *See* Attachment 1.  But none of the alleged combinations show *Virtual Evolved Packet Core* (or vEPC) in combination with Azure Stack Edge, a premise of *every cause of action* for both direct and indirect infringement and therefore a fatal defect in Lemko's complaint.

Lemko's claims of indirect infringement and willfulness require pleading additional elements beyond direct infringement and are similarly scattered.[2]  *Id.* ¶¶ 37-39. Lemko does not allege either Microsoft or Affirmed had *actual knowledge* of the patents-in-suit before this lawsuit was filed.  *Id.* ¶¶ 37-39, 78, 113, 140, 174, 208, 238, 272, 307.  It does not allege it ever notified

---

[2] Lemko's indirect infringement claims are Counts II, IV, VI, VIII, X, XII, XIV, and XVI and each includes allegations of active inducement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c).  Lemko's claim of willful infringement, or willfulness, is found in the Prayer for Relief at ¶ D seeking enhanced damages under 35 U.S.C. § 284, and courts routinely address the sufficiency of willfulness allegations under Rule 12.

Microsoft or Affirmed of its asserted patents or any alleged infringement. Instead, Lemko alleges that it marked its patent-practicing products with the patents. *Id.* ¶¶ 37-38. And it alleges that a decade ago in 2010-2012, when an individual named Martin Taylor was employed by a *different company*, he was informed that "Lemko had obtained patents and was pursuing additional patents," and then *a decade later* in 2020, that company was acquired by Microsoft, where he now works. *Id.* ¶ 39. As a last resort, Lemko alleges that "at least from their receipt of this Complaint," Microsoft and Affirmed knew of the patents-in-suit. *Id.* ¶¶ 78, 113, 174, 208, 238, 272, 307.

Finally, Lemko's indirect infringement claims parrot legal language without facts. Lemko's active inducement claims under § 271(b) allege Defendants provide customers with instructional materials, without identifying which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner. *Id.* ¶¶ 79-83, 114-118, 141-145, 175-179, 209-213, 239-243, 273-277, 308-312. And Lemko's contributory infringement claims under § 271(c) allege Defendants sell their products, without alleging what specific components contributed to infringement, and why the accused products are not suitable for substantial noninfringing use. *Id.* ¶¶ 84, 119, 146, 180, 214, 244, 278, 313.

## III.    LEGAL STANDARDS

To survive a 12(b)(6) dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While a court must accept as true all "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, the Court need not "accept as true conclusory allegations, unwarranted factual inferences, or legal

conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

In the context of patent infringement, for a claim to have facial plausibility, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product[s] infringe[] the patent claim[s]." *Bot M8 LLC v. Sony Corp. Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). The Federal Circuit has articulated that when interpreting motions to dismiss claims for patent infringement, courts "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Secured Mail Sol. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (alteration and citation omitted).

## IV.    ARGUMENT

Lemko fails to plead factual support for the necessary elements of its direct, indirect (inducement and contributory), and willful infringement allegations that are plausible on their face. For the reasons discussed below, these allegations should be dismissed with prejudice for failure to state a claim.

### A.    Lemko's Complaint Should be Dismissed in its Entirety Because it Fails to State any Claim for Direct or Indirect Infringement

#### 1.    The Court should dismiss Lemko's infringement claims because Lemko fails to plausibly allege that the accused products are used in conjunction.

For Lemko's infringement allegations to be plausible, its complaint must contain factual allegations supporting its central allegation that Microsoft's Azure Stack Edge servers are combined with Affirmed's Virtual Evolved Packet Core software. A basic premise for pleading the elements of direct infringement is that "liability for [direct] infringement requires a party to make, use, sell, or offer to sell the patented invention, meaning the ***entire*** patented invention." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007) (emphasis added, overruled on other grounds); *see also, e.g.*, *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246,

1252 n.2 (Fed. Cir. 2000) ("[O]ne may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention.")  (quoting *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 528 (1972)).   Here, Lemko's infringement claims are rooted in its allegation that "a **combination** of the Azure Stack Edge and Virtual Evolved Packet Core," together infringe the patents-in-suit, at least when combined further with various other products to shore up other missing elements.  Dkt. 1 ¶¶ 40, 44 (emphasis added).  Lemko relies on this combination of so-called "Core MEC products" to allege infringement of all eight patents-in-suit.  *Id.* ¶¶ 58, 94, 129, 158, 190, 224, 254, 288.

Lemko's complaint contains a sole allegation to support its claim that Defendants combine the Azure Stack Edge servers with the Virtual Evolved Packet Core software.  In paragraph 43 of its complaint, Lemko alleges that "Defendants sell ASE [Azure Stack Edge] in combination with vEPC [Virtual Evolved Packet Core]" and cites Exhibits 15 and 16.  *Id.* ¶ 43.  Critically, neither cited exhibit supports this allegation.

Rather than provide factual support for Lemko's infringement claims, Exhibits 15 and 16 illustrate that Lemko's infringement allegations are rooted in a mistaken premise and are thus facially implausible.  While Lemko alleges that Exhibit 15 "show[s] vEPC [Virtual Evolved Packet Core] operating in combination with Azure Stack Edge," Dkt. 1 ¶ 43, nowhere in Exhibit 15 is Affirmed's Virtual Evolved Packet Core (or vEPC) shown or otherwise referenced.  *See generally* Dkt. 1-15.  Instead, Exhibit 15 describes **another** Affirmed product, the "Affirmed Private Network Service."  *See* Dkt. 1-15 at 1.  Similarly, while Lemko alleges that Exhibit 16 "show[s] Defendants' marketing of ASE [Azure Stack Edge] in combination with vEPC [Virtual Evolved Packet Core]," this allegation is contradicted by the exhibit.  Dkt. 1 ¶ 43.  Exhibit 16 does not reference Affirmed's Virtual Evolved Packet Core software at all.  *See* Dkt. 1-16 at 2.

6

This is unsurprising, because Exhibits 15 and 16 concern features of the product "Affirmed Private Network Service"—not Virtual Evolved Packet Core software. *See* Dkt. 1-15 (titled "Deploy Affirmed Private Network Service on Azure"); Dkt. 1-16 (titled "What is Affirmed Private Network Service on Azure?"). Affirmed Private Network Service (APNS) is a product that Affirmed launched on June 16, 2021, that "consists of Affirmed Mobile Core, Affirmed Service Manager, Microsoft Azure Stack Edge platform, and Azure Network Function Manager." Dkt. 1-28 at 2-3. Virtual Evolved Packet Core is different software that ***predated*** Affirmed Private Network Service and operated on different servers (i.e., not Azure Stack Edge). *See, e.g.*, Dkt. 1-35 at 1 (a 2019 article using Affirmed's Virtual Evolved Packet Core software on the Red Hat OpenStack Platform). In fact, Exhibit 22 explicitly identifies Virtual Evolved Packet Core as a separate product, described at a separate website address, from Affirmed Private Network Service:

### Products & Solutions

Virtual Evolved Packet Core (vEPC) (https://www.affirmednetworks.com/products-solutions/virtual-evolved-packet-core/)

Affirmed UnityCloud (https://www.affirmednetworks.com/products-solutions/5g-core-unitycloud/)

Affirmed Private Network Service (https://www.affirmednetworks.com/products-solutions/private-network-service/)

UnityCloud Operations (https://www.affirmednetworks.com/products-solutions/unitycloud-operations/)

Affirmed Cloud Edge – Mobile Edge Computing (https://www.affirmednetworks.com/products-solutions/mec-solutions/)

IoT (https://www.affirmednetworks.com/products-solutions/internet-things-iot/)

Content & Security (https://www.affirmednetworks.com/products-solutions/content-security-services/)

Virtual Probe & Analytics (https://www.affirmednetworks.com/products-solutions/virtual-probe-analytics/)

Network Slicing (https://www.affirmednetworks.com/products-solutions/network-slicing/)

WiFi (https://www.affirmednetworks.com/products-solutions/wi-fi/)

Global Professional Services (https://www.affirmednetworks.com/products-solutions/professional-services/)

Dkt. 1-22 at 6 (annotated).

Lemko's sole basis for alleging that Microsoft's Azure Stack Edge servers are combined with Affirmed's Virtual Evolved Packet Core software is thus an "unwarranted factual inference[]," *Gentilello*, 627 F.3d at 544, that further "contradict[s] matters properly subject to judicial notice or by exhibit." *Secured Mail*, 873 F.3d at 913. Lemko's infringement allegations

accordingly are facially implausible and should be dismissed. *See, e.g.*, *Qwikcash*, 2020 WL 6781566, at *4-5 (granting motion to dismiss direct and indirect infringement claims "given irreconcilable internal inconsistencies on the face of its pleading"). Indeed, courts have routinely granted motions to dismiss where, as here, the plaintiff failed to plausibly allege that distinct products were sold or used in combination to satisfy the asserted claims. *See, e.g.*, *TeleSign Corp. v. Twilio, Inc.*, No. 16-2106, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016) (granting motion to dismiss where the complaint failed to "plausibly allege that the multiple products tied to the various claim elements are used conjunctively to infringe"); *F2VS Techs., LLC v. Aruba Networks, Inc.*, No. 17-0754-RGA, 2018 WL 1732152, at *2-*3 (D. Del. Apr. 10, 2018) (granting motion to dismiss, explaining, "[e]ven assuming that [defendant's] controllers and access points *can* be used to form a network, the sale of these components *individually* does not plausibly amount to direct infringement") (emphasis added); *accord Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc.*, 849 F. Supp. 2d 963, 981 (S.D. Cal. 2012) (granting summary judgment of no infringement where the claims required a "combination of a sport goggle and protective clothing," but there was "no showing in the websites or otherwise that [defendant] sells goggles in combination with an article of clothing").

> **2. Lemko compounds the implausibility of its direct infringement allegations by relying on additional unrelated products.**

Throughout its complaint, Lemko compounds the implausibility of its direct infringement allegations by mixing and matching additional unrelated products and alleging facts expressly contradicted by the exhibits on which it relies. As discussed below, Lemko relies on products provided by unrelated third parties (including third parties outside of the United States), mischaracterizes Affirmed's products' functionality, and combines products that are facially incompatible in a strained attempt to allege infringement. Far from plausibly alleging

infringement, Lemko's complaint is fatally flawed, and its direct infringement claims should be dismissed for this independent reason.

> **a)** **Lemko's direct infringement allegations depend on incorporating products owned by third parties unrelated to Defendants or their products.**

Lemko's infringement allegations concerning the patents-in-suit suffer from another critical flaw: they each depend on adding products developed and sold by unnamed third parties, absent any attempt to connect Defendants to these allegedly infringing products. A basic premise for alleging direct infringement is that the "patent-infringement plaintiff must plausibly allege the defendant's connection to the accused device in order to adequately state a claim for relief." *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-cv-243-H, 2020 WL 5500238, at *4 (N.D. Tex. Sept. 11, 2020). Lemko not only fails to plausibly allege that Defendants are in any way connected to these additional products, it flatly ignores that these products are not sold by Microsoft or Affirmed. For this additional reason and as explained below, Lemko's direct infringement claims should be dismissed.

Nearly all of Lemko's infringement allegations depend on the addition of third-party components to satisfy limitations pertaining to cell-phone voice calls. By way of illustration, the '414 patent requires a "base station transceiver" that is "operable to receive a call from a mobile subscriber" (which is a voice call on a cell phone). Dkt. 1-3 ('414 patent) 19:53–55. Lemko addresses this limitation in paragraph 96 of its complaint, in which it alleges "[t]he 414 Accused Products [(i.e., Microsoft Azure Stack Edge servers, Virtual Edge Package Core, Affirmed Cloud Edge)] contain a base station transceiver," and cites Exhibit 34. Dkt. 1 ¶ 96. Exhibit 34, however, does not state that any of Microsoft or Affirmed's products "contain a base station transceiver." *Id.* The face of Exhibit 34 makes clear that it is about "[a] Taiwanese IT hardware manufacturer," Inventec, that deployed Affirmed software "on its own servers" and used radio base stations from

yet another company, ASOCS.  Dkt. 1-34 at 1.  Lemko does not allege that this third-party Taiwanese company is in any way connected to the Defendants.  Nor does Lemko plausibly allege that activities by this foreign, unrelated company could in any way support a claim for patent infringement against Microsoft and Affirmed ***in the United States***.  *See, e.g.*, *Van De Vliert v. Tam Int'l, Inc.*, No. 6:15-cv-135-JRG, 2015 WL 6745811, at *1-*2 (E.D. Tex. 2015) (granting motion to dismiss direct and indirect infringement claims where "the conduct complained of is not alleged to have occurred within the United States").  Lemko's reliance on Exhibit 34 to allege that any of Microsoft or Affirmed's accused products "contain a base station transceiver" is thus seriously flawed in multiple respects, and far from plausible.  *See* Dkt. 1 ¶ 96.

Worse, Exhibit 34 contains Lemko's sole "factual support" for alleging that any of the accused products "contain" a transceiver to enable the transmission of calls, despite nearly every representative patent claim requiring a transceiver or the transmission of a call that necessarily depends on a transceiver.  *See* Dkt. 1-2 ('763 patent) at cl. 1 ("wireless transceiver"); Dkt. 1-3 ('414 patent) at cl. 1 ("receiving . . . a call"), cl. 11 ("base transceiver station"); Dkt. 1-4 ('988 patent) at cl. 1 ("routing a communication"), cl. 42 ("wireless transceiver"); Dkt. 1-5 ('409 patent) at cl. 1 ("the calls routed"); Dkt. 1-6 ('111 patent) ("configured to place a call"); Dkt. 1-7 ('980 patent) at cl. 1 (requiring a "base transceiver station"), cl. 15 ("receive a call"); Dkt. 1-8 ('478 patent) at cls. 1, 16 ("route the communication").  In many instances, Lemko simply states the accused products are "connected to a transceiver" without addressing ownership or control of the transceiver at all.  *See, e.g.*, Dkt. 1 ¶¶ 67, 97, 130.

Lemko cannot plausibly allege direct infringement of these patents absent any factual allegations supporting that Microsoft or Affirmed ***own or provide*** the transceiver necessary to practice Lemko's patent claims.  *Accord Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337,

1345 (Fed. Cir. 2019) (reversing denial of JMOL of no direct infringement where the defendant was "not alleged to provide the cell tower" required by the claims, and thus did not "not provide all the required claim elements").  In other words, Lemko must "plausibly allege [Microsoft or Affirmed's] **connection** to the accused [transceivers] in order to adequately state a claim for relief." *Soar Tools*, 2020 WL 5500238, at *4.  Particularly in the context of claims "rooted in computer technology," as here, Dkt. 1 ¶ 36, Lemko's direct infringement allegations fall far short of satisfying this requirement. *See, e.g.*, *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828, at *1-2 (E.D. Tex. Dec. 11, 2018) (granting motion to dismiss infringement claims directed to "hardware and software involved in an electronic transaction receipt system" where the plaintiff provided claim charts comprising "screenshots from various sources" of defendant's system); *accord Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 WL 9864381, at *4 (E.D. Tex. July 27, 2012) ("[C]ases involving 'more nebulous, less tangible inventions such as computer software methods' may require a higher degree of specificity to provide proper notice to the defendant.").

 For the sole asserted patent that does not require a transceiver or transmission of a call, the '931 patent, Lemko's infringement allegations are implausible for another reason:  Lemko explicitly maps a third-party product, Istio, to allege satisfaction of multiple claim elements. *See* Dkt. 1 ¶¶ 297–300.  Exhibit 45, Istio's website, shows that Istio is an "open source" product—i.e., not a product sold or provided by Microsoft or Affirmed.  Dkt. 1-45 at 3 ("A large ecosystem of contributors, partners, integrations, and distributors extend and leverage Istio for a wide variety of scenarios.  You can install Istio yourself, or a number of vendors have products that integrate Istio and manage it for you.").  Lemko does not plausibly allege that Istio is owned or controlled by Microsoft or Affirmed, or that any of their products integrate Istio.  At most, Lemko cites a white

paper where Affirmed mentions Istio.  *See* Dkt. 1 ¶ 296 (citing Dkt. 1-46 at 11).  Critically, this Affirmed white paper does not suggest that Istio is used with Microsoft or Affirmed's products, but rather it **differentiates** Istio, again emphasizing that it is "open-source based":



Dkt. 1-46 at 11.

Istio's website, of which this Court can take judicial notice, further confirms that Istio is entirely untethered from Microsoft and Affirmed.  *See, e.g.*, *Soar Tools*, 2020 WL 5500238, at *7 (taking judicial notice of a website, while considering a motion to dismiss, to ascertain the owner of a company).  Istio's website explains that "[t]he Istio project was started by teams from Google and IBM in partnership with the Envoy team from Lyft," and has "been developed fully in the open on GitHub."  Ex. A, Istio FAQ.  While Istio's website lists providers that integrate Istio, neither   Microsoft   nor   Affirmed   are   included.   Ex. B   (available   at https://istio.io/latest/about/ecosystem/).  Lemko's allegation that Istio is in any way related to Microsoft or Affirmed's products is again an "unwarranted factual inference[]" that this Court need not "accept as true."  *Gentilello*, 627 F.3d at 544.

For these reasons, as in *Soar Tools*, Lemko's complaint fails to "plausibly allege that [Microsoft or Affirmed] is connected to the manufacture or sale of the accused product"—

transceivers or Istio—and its complaint should be "subject to dismissal under Rule 12(b)(6)." 2020 WL 5500238, at *7.

> **b)    Lemko's allegations concerning the operability of additional products are inconsistent with the exhibits on which Lemko relies.**

Even where Lemko correctly identifies products sold by Microsoft or Affirmed, it gravely mischaracterizes those products' functions and compatibilities as evidenced by the exhibits it cites, again rendering Lemko's infringement allegations facially implausible. For this additional reason, these direct infringement allegations—on top of the other multiple logical flaws with Lemko's allegations—fail to state a claim for relief.

For example, to allege infringement of the '988, '980, '478, and '931 patents, Lemko simultaneously conflates Affirmed Private Network Service with Virtual Evolved Pack Core (*see supra* Section IV.A) and combines Affirmed Private Network Service as an ***additional*** product to satisfy other missing claim elements. In doing so, Lemko alleges that Affirmed Private Network Service functions in a manner at odds with the exhibits it cites. While Lemko purports to rely on Affirmed Private Network Service because it allegedly "supports multiple deployment models to deliver mobile solutions on [Azure Stack Edge] in a distributed network," Lemko bases that allegation on Exhibit 19 to show that "[Affirmed Private Network Service] uses [Affirmed Cloud Edge]." Dkt. 1 ¶ 131, citing Ex. 19 at 4. Exhibit 19, however, does not mention Affirmed Private Network Service at all; and if anything establishes that Affirmed Cloud Edge and Affirmed Private Network Service are different products. *See* Dkt. 1-19 at 4-5.

Lemko cannot plausibly allege that Affirmed Private Network Service is deployed on multiple distributed mobile architecture servers—as required by the representative '988, '980, '478, and '931 patent claims—when none of the exhibits show that Lemko's infringement allegations are based on combinations of accused products that are actually supported. Thus,

several of Lemko's infringement allegations rely on combining products that are hypothetical, without any attempt to plausibly allege how such products could be combined to form an infringing set of products. Lemko's reliance on combinations of Virtual Evolved Packet Core, Affirmed Private Network Service, and Affirmed Cloud Edge that conflicts with the very exhibits it cites dooms its complaint.

For these reasons, Lemko fails to "plausibly allege that the multiple products tied to the various claim elements are used conjunctively to infringe"—or that they even perform the functions necessary to infringe—and Lemko's infringement allegations for these patents should be dismissed. *See TeleSign*, 2016 WL 4703873, at *3 (granting motion to dismiss infringement claims). The serious deficiencies in Lemko's direct infringement allegations identified above cannot be rectified by amendment. Accordingly, the Court should dismiss the direct infringement claims with prejudice.

### 3. Absent an underlying direct infringement, Lemko's indirect infringement claims are also subject to dismissal.

Without an underlying act of direct infringement, which Lemko has not plausibly alleged, there can be no indirect infringement. *See, e.g., In re Bill of Lading*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("[T]here can be no inducement or contributory infringement without an underlying act of direct infringement."); *Qwikcash*, 2020 WL 6781566, at *5 (dismissing indirect infringement claims, explaining "[b]ecause the Court has dismissed the direct infringement claim, the contributory and induced infringement claims cannot survive"). Having failed to plausibly plead any underlying theory of direct infringement, Lemko cannot state a claim for inducement or contributory infringement, and therefore its claims for indirect infringement should also be dismissed.

**B.     Independently, Lemko's Claims of Indirect Infringement and Willfulness Should Be Dismissed Because the Complaint Fails to Allege Additional Elements Required for Those Claims**

**1.     Lemko fails to plead actual knowledge of the patents-in-suit required for claims of willfulness or indirect infringement.**

Both willfulness and indirect infringement claims require the plaintiff to plausibly allege that the defendant had *actual knowledge* of the patents-in-suit. *State Indus., Inc. v. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist, and one must have knowledge of it"); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit"). A mere recitation of "garden variety" allegations of knowledge will not suffice to state a plausible claim for willful or indirect infringement. *M & C Innovations, LLC v. Igloo Prod. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018).

Lemko does not allege facts showing actual pre-suit knowledge of the patents. Instead, Lemko alleges that (1) it marks its "patent-practicing products" with patent numbers, (2) that *over a decade ago* someone at *a different company* was informed generally that Lemko had patents, and finally (3) that Defendants knew of the patents "at least from their receipt of this Complaint." Dkt. 1 ¶ 78. Each of these allegations are legally insufficient and "too attenuated," warranting dismissal of Lemko's willfulness and indirect infringement claims. *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315, at *2 (W.D. Tex. Nov. 30, 2018).

**a)     Lemko's patent marking allegations are legally insufficient to allege Defendants' actual knowledge of the patents-in-suit for purposes of willfulness or indirect infringement.**

Lemko's patent marking allegations are legally insufficient to establish Defendants had *actual* knowledge of the patents-in-suit for purposes of willful or indirect infringement. Dkt. 1 ¶¶ 38, 78, 113, 140, 174, 208, 238, 272, 304. Lemko generally alleges that it "has marked and

continues to mark its patent-practicing products with stickers identifying the applicable patents and identified and continues to identify the applicable patents in the documentation for its software products." *See* Dkt. 1 ¶ 37.  This is not sufficient to plausibly allege actual knowledge. *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, No. 2:20-cv-008272021, WL 4324508, at *5 (D. Utah Sept. 23, 2021) (holding that a plaintiff's general allegations that its products bore patent markings was "not enough on its own to support actual knowledge of each of the Asserted Patents.").

Courts have consistently found that allegations of patent marking, which serve as *constructive* notice for purposes of damages limitations under 35 U.S.C. § 284, are insufficient to establish that Defendants had *actual* knowledge of the patents in suit. *See*, *e.g., Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*, No. 6:20-CV-00318-ADA, 2021 WL 4555802, at *2–3 (W.D. Tex. Oct. 4, 2021) (granting the defendant's motion to dismiss indirect and willful infringement claims, finding that the defendant did not have "actual knowledge" of the existence of the asserted patents simply because the "Complaint [pled] [p]laintiff's compliance with the marking statute."); *Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd*., No. 6:20-CV-19-4952, 2019 WL 8161141, at *4 (C.D. Cal. Aug. 30, 2019) (granting defendant's motion to dismiss willful infringement claim for failure to establish knowledge of the patents-in-suit where the plaintiff alleged that the patents-in-suit were marked on its products, but did not allege that "whether [defendants] had access to its products, whether it was marked at the time [d]efendants had such access, and how [d]efendants would have become aware of the other two patents that were not marked.").  Indeed, courts that have considered patent markings to support such an inference have done so "*only when plaintiffs alleged additional facts* indicating that the alleged infringer had knowledge of the patents or at least knew of, or had access to, the products bearing the relevant

patent markings." *Longhorn*, 2021 WL 4324508, at *5 (emphasis added).  Here, Lemko merely alleges that it marks its allegedly competing products, Dkt. 1 ¶¶ 38, 78, 113, 140, 174, 208, 238, 272, 304; it does not allege any "additional facts" that would indicate that Defendants' actually knew or had access to the products bearing the relevant patent markings.  *Longhorn*, 2021 WL 4324508, at *5. These allegations are legally insufficient to plead actual notice required for indirect or willful infringement.

> **b)** **Lemko's allegations that over a decade ago an employee of a different company was informed Lemko had patents and that company was later acquired by Microsoft is too attenuated to allege Defendants' actual knowledge of the patents-in-suit.**

Lemko's allegations that Martin Taylor, an individual employed by a *different company over a decade ago*, was generally informed in 2010 that Lemko had patents, and that company was later acquired by Microsoft in 2020, where Mr. Taylor now works, is far too attenuated, unspecific, and speculative to impute actual knowledge of the patents-in-suit to Defendants Microsoft and Affirmed. Specifically, Lemko alleges Defendants may have had knowledge of the patents-in-suit because "Mr. Taylor [a current employee of Defendants] and others at Metaswitch Networks[3] [] investigated and met with Lemko" during the 2010 to 2012 time period while Mr. Taylor was employed at Metaswitch. Dkt. 1 ¶¶ 78, 113, 140, 174, 208, 238, 272, 304.  Imputing actual knowledge to Defendants on this basis from over a decade before would require impermissible speculation.  *Twombly*, 550 U.S. at 555 (factual allegations only suffice if they rise above "the speculative level").

Furthermore, these facts are also insufficient to allege actual knowledge by Defendants because they do not even purport to claim that Mr. Taylor was "informed" about the specific

---

[3] The Complaint fails to explain the identity of "others at Metaswitch Networks" and does not allege how any are related to Defendants allegedly having pre-suit knowledge of the patents-in-suit.

patents-in-suit.  Indeed, *four of the eight asserted patents had not even issued by 2012* when the generalized business discussions with Mr. Taylor allegedly took place: the '111, '980, '478, and '931 patents were not issued until 2014 through 2017, respectively. And, even if its allegations were true, courts have consistently held that general knowledge of a plaintiff's patent portfolio does not constitute actual knowledge of the patents-in-suit and have dismissed such claims accordingly.  *See, e.g.*, *Avocent Huntsville, LLC v. ZPE Sys., Inc.*, No. 3:17-cv-04319-WHO, 2018 WL 1411100, at *20 (N.D. Cal. Mar. 21, 2018) ("It is true that the general involvement of employees in the 'design, development, marketing, sales, and patenting' of other technology is not the same as alleging those employees had actual knowledge of the patents-in-suit."); *Finjan, Inc. v. Cisco Sys., Inc*., No. 17-cv-72, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (dismissing a willful infringement claim even though defendant allegedly attended meetings and presentations about plaintiff's patent portfolio because "knowledge of a patent portfolio is not the same thing as knowledge of a specific patent."); *OpenTV, Inc. v. Apple, Inc.*, 14–CV–01622-HSG, 2015 WL 1535328, at *7 (N.D. Cal. Apr. 6, 2015) ("The Court cannot infer knowledge of particular patents from knowledge of the existence of a company's *entire portfolio* of patents") (emphasis in original).

Indeed, similar to here, another district court recently held that plaintiff failed to sufficiently plead that the defendant had knowledge of the patents-in-suit because the plaintiff "[did] not allege that it identified the specific patents during its discussions with [defendant]" and instead, merely alleged that defendant had discussions with plaintiff regarding the plaintiff's patent portfolio generally." *See* Order Granting Def.'s Mot. for J. on the Pleadings, *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, Case No. 20-CV-06469-EMC, 2-3, 5-6 (N.D. Cal. May 5, 2022) (citing to *Finjan*, 2017 WL 2462423, at *5) ("In [*Finjan*], the plaintiff's [complaint] was dismissed

because the plaintiff did not allege direct knowledge of the patents but rather only the collaboration among the parties and general knowledge of Finjan's patent portfolio.").

Here, Lemko merely alleges that Mr. Taylor "discussed a potential partnership with Lemko, evaluated Lemko's technology, and participated in meetings with Lemko, and Lemko informed them that Lemko had obtained *patents* and was pursuing *additional patents* covering its inventions." *See* Dkt. 1 ¶ 39 (broadly referring to the "patents" instead of the "Asserted Patents" as defined in the Complaint) (emphasis added). The Complaint never alleges that Lemko and Mr. Taylor discussed the patents-in-suit during their alleged meetings at a different company over a decade ago.  Thus, because the Complaint "never ties this general knowledge of [plaintiff's] patent portfolio to the Asserted Patents, nor makes any factual allegations that [defendant] specifically learned of the Asserted Patents," plaintiff's indirect and willful infringement claims fail to allege that Defendants had actual knowledge based on this allegation.  *Finjan*, 2017 WL 2462423, at *5.

### c) Filing of this Complaint is legally insufficient to state a claim for pre-suit or post-suit willfulness or indirect infringement.

Lemko's allegations that Defendants knew of the patents at least from being served the Complaint are also legally insufficient to plead actual knowledge required of its claims because "[t]he complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement and willfulness-based enhanced damages."[4] *ZapFraud, Inc. v. Barracuda Networks,*

---

[4] There is a split of authority on the issue of whether the complaint itself is a sufficient source of the knowledge required to sustain claims for post-suit indirect and willful infringement. The *ZapFraud* opinion catalogues the split of authority and acknowledges that "[n]either the Federal Circuit nor the Supreme Court has addressed the issue." *See* 528 F. Supp. 3d 247 at 249-50, n.1-2. In a recent decision from within this District, Judge Godbey acknowledged the split of authority and held that service of the complaint in that case could state a claim for *post*-suit induced infringement, though not pre-suit induced infringement. *Seven Networks, LLC v. Motorola Mobility LLC*, No. 3:21-CV-01036-N, 2022 WL 426589, at *11 (N.D. Tex. Feb. 10, 2022). Notably, however, the *Seven Networks* court based this finding on the fact the plaintiff's "infringement allegations [were] sufficient under the plausibility pleading requirements" and were

*Inc.*, 528 F. Supp. 3d 247, 250 (D. Del. 2021) ("'The purpose of a complaint is to obtain relief from an existing claim and not to create a claim.'" (citation omitted)); *Ravgen, Inc. v. Quest Diagnostics Inc.*, slip op., No. 2:21-CV-9011-RGK (C.D. Cal. Jan. 18, 2022) (dismissing claims of indirect infringement and enhanced damages based on willful infringement where the complaint alleged knowledge from the filing of the complaint). Courts have found that finding otherwise would deter judicial economy and place an impractical burden on the defendants. *See e.g.*, *Ravgen*, No. 2:21-CV-9011-RGK ("It seems beyond the pale to expect every patent defendant to cease all allegedly infringing conduct once a complaint is filed to force them to avoid enhanced damages for willful infringement.") (internal quotation marks and citations omitted.); *Proxyconn Inc. v. Microsoft Corp.*, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) ("[R]equiring a Plaintiff to plead knowledge based on facts other than the filing of the present lawsuit furthers judicial economy and preserves parties' resources by encouraging resolution prior to filing a lawsuit.").

Therefore, Lemko's allegations that Defendants had actual knowledge of the patents-in-suit "from their receipt of this Complaint," Dkt. 1 ¶¶ 78, 113, 140, 174, 208, 238, 272, 307, cannot plausibly sustain its claims of indirect and willful infringement. Because Lemko has failed to sufficiently allege that Defendants had knowledge of the patents-in-suit, its claims for willful and indirect infringement should be dismissed.

> ### 2.     Lemko fails to state a claim for indirect infringement because it fails to allege other required elements of contributory infringement or active inducement.

The court should also dismiss Lemko's indirect infringement claims for Lemko's failure

---

"not bare recitations of legal conclusions." *Id*. In contrast, here, Lemko's allegations are facially deficient, and heavily comprised of "bare recitations of legal conclusions." Therefore, based on policy and the deficiencies in *this* complaint, Microsoft submits that the Court may hold the opposite of *Seven Networks*, because the Complaint in this matter does not serve as a sufficient source of the knowledge required to sustain Lemko's indirect and willful infringement claims.

to plausibly allege other required elements of indirect infringement.  Lemko alleges two forms of indirect infringement – (i) contributory infringement and (ii) induced infringement. Each requires elements in addition to direct infringement and actual notice, as discussed in turn below.

> **a)** **Lemko fails to plead plausible facts that Defendants knew the accused products were contributing to infringement of the patents in suit.**

To state a claim for contributory infringement, Lemko must, among other things: (1) identify the "material or apparatus for use in practicing [the] patented process" that is sold or offered for sale by Defendants and (2) "plead facts that allow an inference that [these] components . . . have no substantial non-infringing uses."  *In re Bill of Lading*, 681 F.3d at 1337 (citations omitted).

Lemko fails to meet these requirements, and *Iron Oak Technologies, LLC v. Dell, Inc.* is instructive.  2018 WL 1631396, at *2 (W.D. Tex. 2018).  In *Iron Oak*, the court dismissed the plaintiff's contributory infringement claim because the plaintiff's complaint (1) failed to "identify the component, material, or apparatus that allegedly contributes to the direct infringement of [the patents-in-suit]" and (2) only provided "conclusory allegations" that the unspecified component was a nonstaple article of commerce.  *Id.*  Likewise, here Lemko does not identify the alleged material components leading to infringement, and instead merely alleges that the "Accused Products are, at a minimum, a material component of the systems that infringe [the patents-in-suit]." Dkt. 1 ¶¶ 84, 119, 146, 180, 214, 244, 278, 313.  As in *Iron Oak*, Lemko merely alleges that the Accused Products "are not a staple article or commodity of commerce suitable for substantial noninfringing use" with any additional supporting facts.  *Id.*; *see Iron Oak*, 2018 WL 1631396, at *2 (citing *Iqbal*, 556 U.S. at 678 ("[The plaintiff's] conclusory allegation that '[t]he components provided by [the defendant] are not staple articles of commerce suitable for substantial non-infringing use,' [internal citation omitted], is no more than a 'threadbare recital' of one of the

elements of a contributory infringement claim"). Thus, Lemko's claims for contributory infringement should be dismissed because it relies on conclusory allegations wholly devoid of facts.

### b) Lemko fails to plead plausible facts of specific intent by Defendants to sustain an induced infringement claim.

To state an allegation of induced infringement, a plaintiff must also allege plausible facts that show the alleged infringer had specific intent to induce patent infringement. *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014) ("To succeed on its induced infringement claim, [p]laintiff must allege facts showing that [defendant]. . . had specific intent to induce the patent infringement."). To satisfy the specific intent requirement through "instructive materials and information concerning operation and use of the accused products," the plaintiff cannot satisfy the Rule 8 notice requirement without also "alleg[ing] any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner." *See Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) (recommending dismissal of induced infringement claim.).

Lemko's induced infringement claims fail because Lemko's generic allegations relating to Defendants' instructions for end-users (providing customers with tutorials, articles, and other materials to support customer's use of its products), *see* Dkt. 1 ¶¶ 81, 116, 143, 177, 211, 241, 275, 310, are insufficient to show that Defendants possessed the required specific intent for induced infringement of the patents-in-suit, a deficiency compounded by Lemko's failure to show the combinations of Accused Products are even used together. Lemko simply alleges that Defendants induced infringement because it provided its customers with instructional and informational

materials and does not allege how or why these materials induce infringement of the patents-in-suit or that they instruct users to combine the various Accused Products in an allegedly infringing manner. Dkt. 1 ¶¶ 81, 116, 143, 177, 211, 241, 275, 310. "[G]eneric allegations, that an alleged infringer provides instructional materials along with the accused products, without more"—like the ones provided by Lemko—are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim" and this claim should be dismissed. *Core Wireless*, 2015 WL 4910427, at *4. Accordingly, Lemko's induced infringement claims, like its claims of contributory infringement, fail to state a claim and should be dismissed.

Based on the incurable defects in Lemko's direct infringement allegations and the independent grounds for dismissal of the indirect and willful infringement allegations, the Court should find that amendment is futile, and dismiss these claims with prejudice.

## V.       CONCLUSION

Lemko's direct, indirect, and willful infringement allegations are devoid of factual support. These allegations are not plausible and do not give rise to an inference of liability. For at least the reasons stated herein, Defendants respectfully request that this Court dismiss Lemko's complaint with prejudice.

Dated: May 9, 2022                          Respectfully submitted,

                                            **WINSTON & STRAWN LLP**

                                            */s/ Kelly C. Hunsaker*
                                            Thomas M. Melsheimer
                                            Texas Bar No. 13922550
                                            TMelsheimer@winston.com
                                            M. Brett Johnson
                                            Texas Bar No. 00790975
                                            mbjohnson@winston.com
                                            Barry Shelton
                                            Texas Bar No. 24055029
                                            bshelton@winston.com
                                            2121 N. Pearl Street, Ste. 900

Dallas, Texas 75201
Telephone: (214) 453-6500
Telecopy: (214) 453-6400

Kelly C. Hunsaker
*Admitted Pro Hac Vice*
California Bar No. 168307
khunsaker@winston.com
Michael R. Rueckheim
Texas Bar No. 24081129
mrueckheim@winston.com
255 Shoreline Drive, Ste. 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Telecopy: (650) 858-6550

*Attorneys for Microsoft Corporation and*
*Affirmed Networks, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are served with a copy of this document via the Court's EM/ECF System on May 9, 2022.

/s/ *Kelly C. Hunsaker*
Kelly C. Hunsaker