IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LEMKO CORPORATION,          §
                            §
              Plaintiff,    §
                            §
v.                          §          Case No. 3:22-cv-363-L-BT
                            §
MICROSOFT  CORPORATION  and §
AFFIRMED NETWORKS, INC.,     §
                            §
              Defendants.    §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants' Motion to Dismiss Plaintiff's
Amended Complaint for Patent Infringement under Federal Rule of Civil
Procedure 12(b)(6) (ECF No. 63). For the reasons set forth below, the
District Judge should GRANT Defendants' motion, but allow Plaintiff one
final opportunity to amend its complaint to state a claim for relief.

**Background**

Plaintiff Lemko Corporation filed its Original Complaint against
Defendants Microsoft Corporation and Affirmed Networks on February 14,
2022, asserting sixteen counts of direct and indirect patent infringement of
eight patents against both Defendants. Original Compl. (ECF No. 1). On May
9, 2022, Defendants filed a Motion to Dismiss Plaintiff's Complaint
pursuant to Rule 12(b)(6) (ECF No. 24). The Court ultimately granted
Defendants' first Motion to Dismiss in part but allowed Lemko to file an

amended complaint. *See* Mem. Op. & Order (ECF No. 50). In its Memorandum Opinion and Order, the Court described the pleading deficiencies in Lemko's Original Complaint, including that:

> [T]he allegations in Plaintiff's Complaint regarding Defendants' control of transceiver elements as to some claims, control of the alleged infringing systems as a whole, and/or control as the final assembler of the alleged infringing systems are conclusory and, thus, insufficient to support plausible causes of action for direct infringement. The allegations in Plaintiff's Complaint regarding "asserted combinations of products" are similarly conclusory. Accordingly, for essentially the reasons urged by Defendants, the court determines that Plaintiff's causes of action for direct infringement are insufficient as currently pleaded and not supported by the exhibits cited by it in responding to the Motion to Dismiss.

*Id.* at 12-13. Because the Court determined that Lemko's direct infringement claims were insufficient as pleaded, the Court pretermitted consideration of Defendants' arguments regarding Lemko's claims based on contributory or induced infringement, and it specifically declined to express any opinion regarding the sufficiency of Lemko's allegations concerning Defendants' knowledge and intent. *Id.* at 13.

Lemko filed its Amended Complaint (ECF No. 59) on October 19, 2023. Defendants responded by filing a Motion to Dismiss the Amended Complaint (ECF No. 63), which is fully briefed and ripe for determination.

## I.   *Asserted Patents*

As alleged in both the Original Complaint and the live pleading, Lemko's infringement claims are based on its patented technology which

"provides a leading, fully edge-capable mobile network platform and resilient 4G/5G wireless networks for use in Industrial Internet of Things ('IoT') applications, private 4G/5G networks, wireless rural broadband systems, and military and public safety deployments." Original Compl. ¶ 2 (ECF No. 1); Am. Compl. ¶ 2 (ECF No. 59). Lemko alleges "[i]n 2004, [it] began offering innovative network products and services that provided multi-access edge computing ('MEC') and were decentralized and virtualized. [Its] products were based on very different paradigms from then-conventional network technology offerings." Am. Compl. ¶ 12 (ECF No. 59). The live pleading asserts that "Lemko's decentralized networks allowed for all network function virtualization ('NFV') or virtualized network function ('VFN') or Network Functions Virtualization Infrastructure ('NFVI') for MEC, which refers to locating computing of traffic and services closer to the customer (the 'edge' of a network) as opposed to locating that computing functionality in centralized server farms." *Id.* ¶ 16.

After Lemko began offering its products and services in 2004, it obtained the Asserted Patents at issue in this case (the '763, '414, '988, '409, '111, '980, '478, and '931 Patents). *Id.* ¶¶ 20-37. Lemko attaches copies of each Patent as exhibits to the Amended Complaint and provides general descriptions of the Patents in its pleadings. Lemko describes each Patent as follows:

The '763 Patent generally discloses providing for group communications between participants, where each participant communicates with a base transceiver station controller coupled to a DMA server. The DMA servers may be configured to permit duplex communications capabilities between participants.

The '414 Patent generally discloses a DMA system that includes an authentication, authorization, and accounting ("AAA") module with a destination preference register, which includes a preferred path for communications to be routed outside of a DMA network accessible to the DMA system.

The '988 Patent generally discloses network communications systems for routing communications between distributed mobile architecture servers using DMA gateways ("DMAGs") where communications information indicates one or more devices accessible by one of a group of DMA servers and a legacy communications network. Communication information is received at a first DMAG for a communications network accessible by a second DMAG.

The '409 Patent generally discloses a DMAG that routes communications to DMA nodes and to roaming DMA nodes, including communications received from a legacy network, and to DMA nodes that can send performance data to a home DMAG and to a visitor DMAG.

The '111 Patent generally discloses receiving at a first DMA system, communications from a first mobile device directed to a second mobile device, and determining whether the second mobile device is registered with one of the first DMA system and a second DMA system based on information stored at an AAA module.

The '980 Patent generally discloses controlling wireless communications when communications are associated with a destination device and received from a first mobile device at a base transceiver station ("BTS") interface of a first DMA server to determine if a first DMAG supports communications with the destination device based on registration data stored at the first DMA server.

> The '478 Patent generally discloses transmitting communications information from a first DMAG to a second DMAG in a DMAG communication network, where the information is associated with a communication network accessible by the first DMAG, and receiving a communication from the second DMAG via the DMAG communication network.
>
> The '931 Patent generally discloses detecting a failure condition relating to a first DMAG at a DMAG management system in communication with at least the first DMAG, a second DMAG, and DMA nodes, and determining if a first DMAG is offline based on a failure condition, selecting the second DMAG, sending a first notification from the DMAG management system to the second DMAG, and sending a second notification from the DMAG management system to an external system configured to connect calls to a mobile station via the first DMAG.

*Id.* ¶¶ 22-36.

## II. *Defendants' Accused Products*

Lemko alleges "Defendants make, use, sell, offer for sale, and/or import into the United States and this District products and services that infringe the Asserted Patents." *Id.* ¶ 50. In its Original Complaint, Lemko alleged that combinations of Defendants' products—centered on Azure Stack Edge (ASE) and Virtual Evolved Packet Core (vEPC)—infringed the Asserted Patents. Original Compl. ¶¶ 40-50.

In the live pleading, Lemko continues to center its infringement claims on a collection of products and services, including Affirmed Mobile Core, Affirmed Networks' Mobile Content Cloud (MCC), Affirmed Cloud Edge (ACE), Affirmed UnityCloud, Affirmed Private Network Service

(APNS), Azure Stack Edge (ASE) servers, and Affirmed Networks' vProbe. *Id.* ¶ 55.

These Accused Products are allegedly "used to provide MEC networks that are implemented on a decentralized network, VFN or NFV, and are used to operate private telecommunications networks for data transmission and voice calls that can interoperate with outside networks, such as the Internet and common-carrier cellular networks." *Id.* ¶ 51. The Accused Products "include core network functionality, servers, and add on services. Core network functionality manages the connections between users and the network and provides network access. Servers are used to host the software that provides the mobile network packet core functionality. Add-on services include a variety of additional functionalities for managing, monitoring, and controlling the networks." *Id.* ¶ 52.

### III.   *Infringement Claims*

Lemko brings claims for direct and indirect patent infringement for each of the patents at issue—its '763, '414, '988, '409, '111, '980, '478, and '931 Patents. *Id.* ¶¶ 79-284. For each Patent except the '409 Patent, Lemko alleges Defendants infringe through making, using, importing, selling, and offering for sale Affirmed Mobile Core, Affirmed Networks' Mobile Content Cloud (MCC), Affirmed Cloud Edge, Affirmed UnityCloud, and Affirmed Private Network Service, with each Accused Product infringing the Patents alone. For the '409 Patent, Lemko alleges Defendants infringe through

making, using, importing, selling, and offering for sale Affirmed Mobile Core, Affirmed Networks' MCC, ACE, Affirmed UnityCloud, and APNS, with each Accused Product infringing the Patents alone or in combination with an ASE [Azure Stack Edge]. *Id.* ¶¶ 158-188. Lemko also alleges Defendants infringe the '409 Patent through each of the Accused Products in combination with Affirmed Networks' vProbe. *Id.* ¶ 159.

In the pending Motion to Dismiss, Defendants generally argue that Lemko fails to cure the pleading deficiencies found in its Original Complaint. *See generally* Mot. Dismiss (ECF No. 63). Defendants contend that the Amended Complaint "continues to mix and match products and make conclusory allegations not supported by the evidence it cites[,]" a critical deficiency emphasized by the Court in its Opinion granting Defendants' first Motion to Dismiss. *Id.* at 7.

## Legal Standards

Issues that are unique to patent law are governed by Federal Circuit precedent. *See Woods v. DeAngelo Marine Exhaust Sys., Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012). Courts, however, apply the law of the regional circuit when deciding whether to grant a motion to dismiss under Rule 12(b)(6) in a patent case. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) ("We review procedural issues, including the grant of a motion to dismiss, according to the law of the respective

regional circuit[.]"). Fifth Circuit and Supreme Court authority, therefore, govern the analysis of Defendants' Motion to Dismiss.

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that

the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

When applying the plausibility standard, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). But a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Review is "limited to the complaint, any documents attached to the complaint, and any documents attached to the [motion to dismiss] that are central to the claim and referenced by the complaint." *Smith v. Buffalo Wild Wings*, 2021 WL 4265849, at *2 (N.D. Tex. Sept. 20, 2021) (Fitzwater, J.) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); *see also Inclusive Communities Project, Inc. v. Heartland Cmty. Ass'n, Inc.*, 399 F. Supp. 3d 657, 665 (N.D. Tex. 2019) ("In ruling on [a Rule 12(b)(6)] motion, the court cannot look beyond the pleadings." (citing *Spivey*, 197 F.3d at 774)), *aff'd,* 824 F. App'x 210 (5th Cir. 2020).

Dismissal of a patent-infringement claim is appropriate when "the plaintiff merely recites that the defendant infringes a claim limitation but fails to identify the parts of the allegedly infringing instrumentality that perform the limitation or allege how the identified parts meet the text of the limitation." *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, 2021 WL 3030066,

at *4 (N.D. Tex. July 2, 2021). Further, "[i]n ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1358 (Fed. Cir. 2018) (quoting *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017)).

## Analysis

I.   <u>The Amended Complaint fails to plausibly allege direct infringement.</u>

Direct patent infringement occurs when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor." 35 U.S.C. § 271(a). A defendant is not liable under § 271(a) for direct infringement unless the accused product embodies a complete patented invention. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 & n.2 (Fed. Cir. 2000). Direct infringement "requires that each and every limitation set forth in a claim appear in an accused product." *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1325 (Fed. Cir. 2016) (citation omitted).

Lemko fails to plausibly allege direct infringement in its live pleading for several independent reasons. First, the Amended Complaint fails to cure some of the specific pleading deficiencies relied on by the Court when granting Defendants' first Motion to Dismiss. For example, in its

Memorandum Opinion and Order, the Court explained that the allegations in Plaintiff's Original Complaint related to Defendants' "control of the alleged infringing systems as a whole, and/or control as the final assembler of the alleged infringing systems [were] conclusory[.]" Mem. Op. & Order 12-13 (ECF No. 50). In the Amended Complaint, Lemko largely repeats the same allegations regarding Defendants' control as the final assembler. Specifically, both pleadings repeatedly present the unadorned conclusion that "Defendants directly infringe by acting as the final assembler of the infringing system." Orig. Compl. ¶¶ 55, 91, 126, 155, 187, 221, 251, 285 (ECF No. 1); Am. Compl. ¶¶ 83, 111, 140, 162, 193, 218, 240, 263 (ECF No. 59). The only new allegations in the Amended Complaint are Lemko's assertions that "Defendants act as the final assembler by configuring the final infringing system at the direction of their customers. Defendants further act as the final assembler by selling products such as Affirmed Private Network Service as a 'bundled, turnkey solution,' which combines several products[.]" Am. Compl. ¶¶ 83, 111, 140, 162, 193, 218, 240, 263 (citing Ex. 28 at 2-3). These minimal additions do not elevate Lemko's allegations above the conclusory level, and ultimately, do not plausibly lead to a reasonable inference that Defendants control the infringing systems as the final assembler.

Second, the Amended Complaint fails to include allegations regarding certain limitations set forth in Lemko's asserted claims. For example, regarding the '409 Patent, to plausibly plead direct infringement of claim 1,

Lemko must provide sufficient allegations that the Accused Products include "a visitor dMA register including a list of a second group of dMA nodes." Pl.'s Ex. 5 at 15 (ECF No. 59-5). As Defendants point out, the Amended Complaint is void of such an allegation. Regarding the '980 Patent, Lemko must plausibly allege that the Accused Products make a call that includes voice information. Pl.'s Ex. 7 at 20-21 (ECF No. 59-7). Again, the Amended Complaint does not include this specific allegation. *Id.* Because the Amended Complaint lacks sufficient allegations regarding elements of the Asserted Patents' claims, Lemko fails to state claims for direct infringement. *See Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 188 (Fed. Cir. 2019) (holding that plaintiff failed to sufficiently plead an infringement claim, since the complaint did not identify in any accused products an "air-tight seal" required by claims of patent).

Third, Lemko's supporting allegations lack sufficient factual detail and too closely track the claim language to be deemed plausible and nonconclusory. For the '988 Patent, for example, in order to plead infringement of claims 22 and 42, Lemko must plead allegations showing the Accused Products include "[a] network communications system, comprising: a first distributed mobile architecture (DMA) gateway including: a first interface adapted to communicate with a legacy communications network; a second interface adapted to communicate with a private Internet Protocol (IP) network; a third interface adapted to

communicate with a DMA gateway communications network" and that the DMA server is coupled with a wireless transceiver. Pl.'s Ex. 4 at 28 (ECF No. 59-4). Lemko effectively copies this claim language, only with slight rephrasing. Lemko does not add sufficient factual support or plausible explanation for how each Accused Product allegedly infringes the claim. *See* Am. Compl. ¶ 144 (ECF No. 59) ("The '988 Accused Products each provide a network communications system—with multiple Affirmed Mobile Cores [DMA servers], each Affirmed Mobile Core has private IP connection to the Affirmed Mobile Core-CP with a link to the Operator Core [DMAG server]. The Affirmed Mobile Core-CP with Operator Core connects the Internet and to legacy communications networks, such as common-carrier networks."). This rephrasing does not suffice to plausibly plead direct infringement. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.").

Fourth, the Amended Complaint contains generalized and conclusory allegations which too often refer to the Accused Products collectively. These allegations do not plausibly explain how limitations set forth in a claim appear in an accused product by itself. *See LifeNet Health*, 837 F.3d at 1325.

While Lemko alleges each of the same five Accused Products "infringes alone," or as to the '409 patent "alone or in combination[,]" the allegations in the Amended Complaint do not adequately allege that any specific Accused Product includes the elements of the relevant patent claims. Instead, Lemko largely provides generalized allegations about the "Accused Products" collectively meeting elements of the patent claims.

For example, as Defendants point out in their Motion to Dismiss, Lemko alleges for the '763 Patent that each of the five Accused Products alone infringe at least Claim 1. Am. Compl. ¶ 80 (ECF No. 59). Lemko then only mentions one particular Accused Product and refers jointly to the '763 Accused Products. But as the Court already explained in its Memorandum Opinion and Order dismissing Lemko's Original Complaint, direct infringement cannot be shown through "mixing and matching between different accused products" or "a muddled hash of elements from different products." Mem. Op. & Order 8 (ECF No. 50) (citing *Geovector Corp. v. Samsung Elecs. Co.*, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017)). Each of Lemko's direct infringement claims fail based on the same shortcoming of mixing and matching between different Accused Products. *See* Mot. Dismiss 15-16 (ECF No. 63) (Defendants' table showing Lemko's mixing and matching). Accordingly, Lemko's allegations collectively referencing the Accused Products without sufficient allegations tied to each Accused

Product do not plausibly plead direct infringement for any of the relevant patents.

Finally, Lemko fails to plausibly plead direct infringement through reliance on the exhibits attached to the Amended Complaint. *See* Am. Compl., Exs. 1-37 (ECF No. 59); *see also* Resp. 16 (ECF No. 68) ("To further substantiate its well-pleaded factual allegations, Lemko attaches 37 exhibits to its Amended Complaint."). Critically, the attached exhibits do not reference each Accused Product or map the functionalities of each Accused Product to the patent claims at issue. Instead, the exhibits only refer to one or two of the Accused Products. *See* Mot. Dismiss 15-16 (ECF No. 63) (Defendants' table showing the Accused Products referred to in Lemko's cited exhibits). Similar to Lemko's allegations referring to the Accused Products collectively, these demonstrative exhibits fail to plausibly explain how limitations set forth in a claim appear in each Accused Product. Again, this sort of mixing and matching is not sufficient to support Lemko's claims that the Accused Products infringe alone, or, as to the '409 patent, infringe alone or in combination.

In sum, for the foregoing reasons, the pleadings in the Amended Complaint remain deficient and fail to plausibly allege direct infringement of any of the Asserted Patents.

II.   <u>The Amended Complaint fails to plausibly allege indirect</u>
<u>infringement.</u>

Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004); *see also In re Bill of Lading*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("[T]here can be no inducement or contributory infringement without an underlying act of direct infringement."). Accordingly, because Lemko's direct infringement claims fail for the reasons explained above, Lemko also fails to plausibly allege any indirect infringement claim.

Alternatively, even if Lemko has stated underlying claims of direct patent infringement, the Amended Complaint contains insufficient allegations to state claims for indirect patent infringement. Specifically, to state a claim for indirect infringement, a plaintiff must plausibly plead a defendant's knowledge—that is, a plaintiff must adequately allege that a defendant knew of the patent in suit and that the induced acts constitute patent infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."). The knowledge requirement must be met by a showing of either actual knowledge or willful blindness. *Global-Tech Appliances, Inc. v. SEB S.A.*,

16

563 U.S. 754, 766 (2011). Mere knowledge of acts alleged to constitute infringement is not sufficient; rather, the plaintiff must show "specific intent and action to induce infringement." *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1368 (Fed. Cir. 2017) (citations omitted).

To support Defendants' knowledge in this case, Lemko alleges that "[o]n information and belief, Defendants know of the Asserted Patents and that Defendants' Accused Products . . . infringe the Asserted Patents from their awareness of Lemko's patent-marked products, which compete with the Accused Products." Am. Compl. ¶ 45 (ECF No. 59). Lemko further alleges "[o]n information and belief, Defendants are also aware of the Asserted Patents through Martin Taylor[.]" *Id.* ¶ 46. Taylor is a current employee for Microsoft's Office of the CTO who previously worked for a company that had a business relationship with Lemko. *Id.* Lemko alleges that Taylor, while working for the other company, discussed a potential partnership with Lemko, evaluated Lemko's technology, participated in meetings with Lemko, and was informed that Lemko had patents. *Id.* Lemko further alleges that Defendants knew of the Asserted Patents from their receipt of the Original Complaint and Lemko's Preliminary Infringement Contentions. *Id.* ¶¶ 45-48.

As an initial matter, allegations on "'information and belief' without any factual support [are] insufficient to state a plausible claim." *Bryant v. Ditech Fin. LLC*, 2022 WL 17407994, at *3 (N.D. Tex. Dec. 2, 2022) (citing

*DTND Sierra Invs. LLC v. Bank of N.Y. Mellon Tr. Co., N.A.*, 958 F. Supp. 2d 738, 749 (W.D. Tex. July 26, 2013)).

Moreover, the factual support Lemko adds does not create a reasonable inference that Defendants had actual knowledge of the Asserted Patents. At best, Lemko's allegations about Taylor create a reasonable inference of a general awareness regarding Lemko's broad patent portfolio. The allegations do not raise a reasonable inference of knowledge of the specific Asserted Patents at issue in this action. However, "[k]nowledge of a patent portfolio generally is not the same thing as knowledge of a specific patent." *HOYA Corp. v. Alcon Inc.*, 2024 WL 310706, at *16 (N.D. Tex. Jan. 26, 2024) (Lynn, J.) (citing *Finjan, Inc. v. Cisco Sys. Inc.*, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017)); *see also Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, 661 F. Supp. 3d 643, 652 (W.D. Tex. 2023) ("Because [plaintiff's] Complaint does not plead sufficient facts that show that [defendant] had more than a general knowledge of [plaintiff's] patent portfolio, its FAC cannot plausibly support an allegation of pre-suit knowledge.").

Lemko's general allegations about its patent-marked products also fail to adequately plead knowledge. The Amended Complaint does not add sufficient factual detail indicating that Defendants knew about or had access to the products bearing the relevant patent markings. Without such additional support, the existence of patent-marked products by itself does

not allow the Court to make the reasonable inference that Defendants had actual knowledge of the patents in suit. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1342 (Fed. Cir. 2016) (patent markings in a small, competitive industry provided some evidence suggesting knowledge when plaintiff also produced internal documents from defendant showing that it was aware of the patents at the time of infringement).

Lemko's allegations that Defendants' receipt of the Original Complaint in this action also do not raise a reasonable inference of Defendants' knowledge. First, for any indirect infringement claims based upon Defendants' conduct pre-dating this lawsuit, the filing of the Original Complaint alone cannot be the basis for Defendants' required knowledge. *See Seven Networks, LLC v. Motorola Mobility LLC*, 2022 WL 426589, at *11 (N.D. Tex. Feb. 10, 2022) ("[N]otice from the lawsuit cannot support allegations of pre-suit induced infringement because knowledge that the patent exists and that the induced acts constitute infringement remain critical elements of establishing an inducement claim."). Second, for indirect infringement claims based upon Defendants' conduct after the initiation of this action, this Court's dismissal of the Original Complaint shows that the initial pleading by itself was not enough to put Defendants on notice of actual patent infringement. *See id.* (holding that service of the complaint could show knowledge and thus state a claim for post-suit induced

infringement, but emphasizing that the complaint itself did plausibly plead infringement).

Finally, allegations of Defendants' receipt of Lemko's Preliminary Infringement Contentions do not raise a reasonable inference of Defendants' knowledge. Lemko did not attach the contentions to its Amended Complaint, and thus, the contentions are not properly before the Court in considering Defendants' Motion to Dismiss. *See Inclusive Cmtys. Project Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (when considering a 12(b)(6) motion, the court is limited to "facts set forth in the complaint, documents attached to the complaint," and documents attached by defendant to its motion to dismiss that are referenced in plaintiff's complaint).

Accordingly, because Lemko fails to adequately allege Defendants had knowledge of the Asserted Patents and the patent-infringing conduct, it fails to state a claim for indirect patent infringement.

## Opportunity to Amend

Courts should freely give leave to amend pleadings when justice so requires. Fed. R. Civ. P. 15(a). The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow amendment, a court considers "undue delay, bad faith or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). "The court may deny leave to amend . . . if the defects are incurable or the plaintiff[] ha[s] already alleged her best case." *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (per curiam) (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)).

Here, Lemko has already been given an opportunity to amend its pleadings and address the deficiencies noted by the Court in its Memorandum Opinion and Order granting Defendants' first Motion to Dismiss. However, the Court previously pretermitted consideration of Defendants' arguments regarding Lemko's claims based on contributory or induced infringement, and it specifically declined to express any opinion regarding the sufficiency of Lemko's allegations concerning Defendants' knowledge and intent. The Court discerns no undue delay, bad faith, or dilatory motive on Lemko's part, and—because the case is still in a nascent stage—any prejudice to Defendants is minimal. Given the number of Asserted Patents and Accused Products identified in the live pleading, it is not clear that amendment would be wholly futile. Lemko may be able to cure

the deficiencies identified—at least as to some Asserted Patents and Accused Products. Lemko also has the benefit of a judicial opinion regarding its contributory or induced infringement claims. For these reasons, the Court should afford Lemko one final opportunity to amend its pleadings.

## Recommendation

For the reasons explained, the District Judge should GRANT Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 63). The Court should give Lemko a deadline to file an amended complaint that cures the deficiencies identified herein. The Court should admonish Lemko that failure to timely file an amended complaint will result in the dismissal with prejudice of this action pursuant to Rule 12(b)(6).

**SO RECOMMENDED**.

July 29, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will

bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).